FILED
2013 Sep-23  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **GARY WAYNE KARR,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **7:12-CV-00899-KOB** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter comes before the court on a seemingly simple decision to deny a claimant's request to reopen his application for social security income. To evaluate this decision, however, the court must delve into the intricate procedural web that surrounds the issue. The saga began on February 29, 2004, when the claimant, Gary Wayne Karr, applied for supplemental security income (SSI) under Title XVI of the Social Security Act. (R. 14). Although his application was originally denied, on March 31, 2006, claimant received a determination from an Administrative Law Judge (ALJ) that he was disabled as of January 21, 2004, the date that claimant protectively filed his application. Following this determination, the Social Security Administration (SSA) attempted to contact the claimant to collect necessary information to determine if he met the non-disability requirements for eligibility. Because claimant did not provide this information, the SSA denied claimant's claim on May 10, 2006, and again on or about October 17, 2006. On March 15, 2007, claimant filed a new application for SSI, which the SSA granted, but only as of

the March 15, 2007 filing date. (R. 14-15).

Claimant requested that his previous claim be reopened and, upon the denial of this request, immediately requested a hearing in front of an ALJ. On February 12, 2008, the ALJ dismissed claimant's request for a hearing (despite having already held the hearing), stating that a denial of a request to reopen is not an initial determination that he could review. Claimant appealed this order to the Appeals Council (AC), which, on November 13, 2008, vacated the ALJ's order to dismiss and remanded claimant's case to another ALJ for a determination of whether the SSA's denial due to failure to cooperate was correct.  On May 5, 2010, the ALJ issued an unfavorable decision against claimant. Claimant appealed to the AC, which denied claimant's request for review. Claimant now appeals to this court. (R. 15-16). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review:

(1) whether substantial evidence supports ALJ Conger's decision denying claimant's request to reopen his February 29, 2004 application for SSI;

(2) whether claimant has received the due process of law to which he is entitled under the Fifth Amendment of the U.S. Constitution; and

(3) whether claimant has received the equal protection to which he is entitled under the Fifth Amendment of the U.S. Constitution.

2

### III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV. LEGAL STANDARD

To receive SSI benefits, a claimant must meet all of the eligibility requirements. These requirements include factors other than disability, such as an evaluation of the claimant's income and other resources, to insure that he does not have more than is permitted by law. *See* 20 C.F.R.

3

§ 416.202. Furthermore, barring the presence of certain enumerated exceptions, a claimant is not eligible for SSI benefits if he is a resident of a public institution. *See* 20 C.F.R. § 416.211. A public institution is defined as "an institution that is operated or controlled by the Federal government, a State, or a political subdivision of a State such as a city or county." 20 C.F.R. § 416.201.

A claimant must provide the SSA with any information, documentation, or other evidence that the SSA requests to prove that the claimant meets these non-disability requirements. *See* 20 C.F.R. § 416.200; *see also* 42 U.S.C. § 1383(e)(1)(A) ("The Commissioner of Social Security shall . . . prescribe such requirements with respect to . . . the furnishing of other data and material . . . as may be necessary for the effective and efficient administration of this subchapter."). The claimant has a duty to "answer completely" when providing information. 20 C.F.R. § 416.203(a). Information relevant to the eligibility determination includes the income of claimant's spouse and details about claimant's living situation as it relates to the support and maintenance he is receiving from others. *See* 42 U.S.C. §§ 1382(a), 1382a(a)(2)(A), 1382b; 20 C.F.R. § 416.1104 ("In some situations we must consider the income of certain people with whom you live as available to you and part of your income.").

The Fifth Amendment to the U.S. Constitution guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." The Supreme Court has recognized that social security benefits can be Fifth Amendment due process "property," at least under some circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (finding that an individual had a "statutorily created 'property' interest protected by the Fifth Amendment" in the *continued* receipt of social security benefits). The Court has further held that "[t]he fundamental

requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333 (citations and internal quotations omitted); *see also Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985) (holding that a social security claimant was not deprived of procedural due process through the procedures employed by the ALJ).

Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has found that it includes an equal protection component that is analyzed in the same way as the equal protection component of the Fourteenth Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (superseded by statute on other grounds). The Court has held:

> The equal protection obligation imposed by the Due Process Clause of the Fifth Amendment is not an obligation to provide the best governance possible. . . . Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, areas in which the judiciary then has to intervene in the democratic process, this Court properly exercises only a limited review power over Congress, the appropriate representative body through which the public makes democratic choices among alternative solutions to social and economic problems.

*Schweiker v. Wilson*, 450 U.S. 221, 230 (1981) (finding that the Social Security Act does not classify individuals directly on the basis of mental health).

## V. FACTS

The claimant has an elementary education and was fifty-one years old at the time he filed the application for SSI that is currently before the court. (R. 99, 110). He has no past relevant work experience, as he has not worked since 1982. (R. 106). The claimant alleged he was unable to work because of heart problems, nerve problems, right knee problems, having previously had cancer, and being "tired." (R. 105).

*Procedural History*

At issue today is the May 5, 2010 decision of ALJ Paul S. Conger to not reopen the previous decision of the SSA denying claimant's requested SSI benefits. (R. 11-20). The procedural history for this decision, however, begins much earlier.

On February 29, 2004, claimant applied for SSI. In his Disability Report, claimant noted that he could read, speak, and write more than his name in English, that he completed fifth grade, and that he did not attend special education classes. (R. 105-10). On May 5, 2004, the SSA denied claimant's February 29, 2004 claim, determining that claimant's condition was not severe enough to keep him from working. (R. 43). On June 10, 2004, the SSA received claimant's request to have his disability determination reviewed by an Administrative Law Judge (ALJ). (R. 49). ALJ Jerry M. Vanderhoef set a hearing for June 22, 2005, and notified claimant by mail on May 31, 2005. The SSA sent the notice to P.O. Box 1261, Hamilton, AL, the same address that the claimant had listed on his request for a hearing by an ALJ. (R. 49, 51). On June 9, 2005, claimant's notice of hearing was returned to the SSA. (R. 55).

Ashley Bottun contacted claimant's attorney on behalf of the SSA. On June 16, 2005, Rebecca in the attorney's office told Ms. Bottun that the case needed to be postponed because her office believed the claimant had moved to Mississippi and they had been unable to successfully contact him. Ms. Bottun spoke to Rebecca again on June 21, 2005 and Rebecca said that her office had still been unable to get in touch with the claimant. (R. 55). That same day, claimant's attorney, Mark Hammitte, sent a letter to ALJ Vanderhoef requesting that the hearing be reset for a future date, as Mr. Hammitte had been unable to contact claimant, who had apparently moved and failed to provide a forwarding address. (R. 56).

6

On January 18, 2006, the SSA notified claimant that his new hearing date was February 6, 2006.[1] (R. 58). On March 31, 2006, ALJ Vanderhoef issued a decision favorable to claimant, finding that he had been under a disability from January 21, 2004 through the date of the decision. (R. 38). Although the letter itself is not in the record, other parts of the record reveal that the SSA issued a letter on May 10, 2006, notifying the claimant that he was not eligible for social security insurance (SSI) benefits because he had failed to co-operate in providing information needed to determine if he met the non-disability requirements. (R. 19, 85, 416).

On July 3, 2006, Claims Representative G. Burnett spoke to claimant over the phone regarding his incarcerations and felony warrants. According to Ms. Burnett's record of contact, claimant "kept talking in circles & alleged that due to his inability to read & write he could not provide any of his incarceration dates or where he was living when." Claimant gave Ms. Burnett a Mississippi driver's licence, but asserted that he had never lived at the address on the license, but had listed it because it was his wife's aunt's address and his wife was living there. He reported that he got married sometime in 2004, but was unable to give his wife's previous name or any other identifying details about her. Claimant admitted that he was recently incarcerated in Lucas County, Ohio for violating parole, but insisted that this was his only incarceration since 2004. He later admitted, however, that he had also been in a federal penitentiary in Talladega, Alabama and a halfway house in Tupelo, Mississippi. Ms. Burnett noted that claimant's jail time in Lucas County explained why he had missed his four previous SSA appointments. (R. 80).

On July 5, 2006, Ms. Burnett called the Lucas County jail prior to claimant's appointment time. She spoke to Judy Welsh, who told her the jail records showed that claimant was

---

[1] The transcript of this hearing is not a part of the record currently before this court.

incarcerated from March 19, 2006 through June 29, 2006. Ms. Burnett noted that this incarceration was much longer than the 60 days that claimant had alleged. Ms. Welsh also revealed that claimant had an outstanding warrant in Marion County, Alabama, but was mistakenly released anyway. Claimant's bond form gave a Napoleon, Ohio address. (R. 80-81).

Ms. Burnett met with claimant in person on July 5, 2006, and claimant told her that he had never lived in Napoleon and only gave that address because that is where his brother lived. Ms. Burnett noted that claimant "originally" gave his sister's Defiance, Ohio address as his residence, but that claimant claimed he had never lived with his sister, but was living with his nephew in Oakwood, Ohio. Claimant also admitted to being in prison in Atlanta, Georgia, Kentucky, and other places, but did not give dates. According to Ms. Burnett, claimant "just kept talking in circles" and it "doesn't make sense." Ms. Burnett attempted to call claimant's Toledo attorney, George Gernot, who claimant said could clarify everything, but the attorney did not return the call. (R. 81).

Also on July 5, 2006, Ms. Burnett noted that claimant faxed in a copy of his marriage certificate, but that the name of the county on the certificate was illegible and that claimant could not remember the county because he could not read or write. The marriage certificate showed that claimant's wife's name was Debra E. Newcomb. Claimant asserted that the only place his wife had worked since their 2004 marriage was Golden MFG and that she worked there until June 2006. Claimant did not provide verification of his wife's earnings or W-2 forms, despite being told that the SSA needed these forms. According to Ms. Burnett, claimant's wife's detailed earnings query showed that she also had 2005 earnings from Heartland Partnership. (R. 81).

Ms. Burnett also spoke with Karen in the Marion County, Alabama Sheriff's office.

Karen confirmed that an outstanding warrant existed on Claimant for a probation violation in Marion County and that claimant had numerous arrests in that county, including receiving stolen property, criminal trespass, drugs, weapons violation, intimidation, bad checks, etc. Despite this report, claimant repeatedly insisted that the warrant was satisfied. Karen told Ms. Burnett "to be very cautious about anything claimant tells [you] because he is a con artist." Karen reported that in May 2004 claimant had listed his address with her office as 1261 Military Street, Hamilton, Alabama. Ms. Burnett noted that this address was different from the two Alabama addresses that claimant had previously provided to the SSA. (R. 82).

In addition, Ms. Burnett called the halfway house in Tupelo, Mississippi while claimant was at her desk. The individual at the halfway house reported that claimant's records were not available because they were over six months old, but that claimant was given written documentation showing his release. This person referred Ms. Burnett to the Federal Bureau of Prisons, who in turn referred her to Frankie at the Talladega Prison. Ms. Burnett learned from Frankie that the prison had released claimant from an earlier incarceration on July 3, 2003, but that he went back to prison on June 30, 2005 and was there until January 11, 2006, when the prison released him to a halfway house in Mississippi. Prison records also showed that claimant received credit for time served from September 22, 2004 to November 4, 2004, but the records did not show where this incarceration was located. (R. 82).

When confronted with this information, claimant refused to "give a straight forward answer" and began making accusations against Ms. Burnett, causing the office supervisor to come in and audit the interview. Because of safety concerns, an office guard also listened in from an out-of-sight location. Ms. Burnett informed claimant that the SSA could not issue any

9

payment until the issues regarding his incarcerations and his wife's income were resolved. Claimant repeatedly stated that his brother in Michigan, who was an attorney, had all of the information. Claimant would not give Ms. Burnett his brother's contact information so the SSA could contact the brother directly, but claimant agreed to secure all necessary information and re-contact the office to reschedule the necessary appointment. (R. 83).

On September 16, 2006, the SSA sent claimant a letter requesting that he call "Mr. Peggs" in the SSA office before September 22, 2006. (R. 62). The SSA sent another letter on October 5, 2006, stating:

> The agency has been attempting to obtain information from you in order to start your benefits since March 31, 2006. If you are still interested in receiving SSI please cooperate without delay. You may call Mr. Peggs at [number]. Everything that was requested last from you on July 3, 2006 is still outstanding. Failure to comply with this notice will result in a loss of all benefits.
>
> We cannot process your claim without this information. Therefore, we will deny your claim if we do not hear from you by October 17, 2006.

(R. 63). The SSA sent both letters to P.O. Box 1261, Hamilton, Alabama. (R. 62-63).

On June 27, 2007, claimant submitted a request for reconsideration to the SSA, asking that his prior claim be reopened. (R. 65). On August 3, 2007, the SSA sent claimant a letter informing him that someone had reviewed his case again and determined that "[b]ased on the evidence in the file, the failure to cooperate denial on your prior claim was correct." (R. 66). That same day, the SSA received from claimant a request for a hearing by an ALJ. The request stated: "I do not believe the failure to cooperate denial on my prior claim was correct." (R. 68). On November 15, 2007, the SSA sent claimant a letter notifying him of his December 13, 2007 hearing. The SSA sent this letter to 4665 White Springs Road, Fulton, Mississippi. (R. 72). On

November 23, 2007, claimant responded to the SSA, acknowledging receipt of his notice of
hearing and indicating that he would be present at the hearing. (R. 78).

On December 13, 2007, a hearing commenced in front of ALJ Jerry M. Lang. Claimant
and ALJ Lang discussed the time frame of claimant's claims and appeals, and claimant testified
that he never received certain communications sent by the SSA following his 2006 determination
that he was entitled to benefits. Claimant stated that he left a forwarding address at his old
address, but was aware that a lot of his mail did not get forwarded. He testified that he kept
calling his lawyer in an attempt to get information, but that his lawyer repeatedly stated that he
had not heard anything. Claimant also testified that the Ohio and Alabama SSA offices "didn't
get together" in transferring him back and forth and, therefore, caused some of the confusion. (R.
420-22).

Claimant admitted to serving jail time during various periods, but denied that he was
"laying low" and difficult to contact because of an outstanding warrant, as alleged by the reports
from the local SSA office. Claimant testified that he eventually walked into a SSA office and the
individuals there showed him a letter reflecting a May 10, 2006 denial of benefits. ALJ Lang told
claimant: "I'm going to look at it all again, but your problem's going to be - - it just seems like,
you know, you were trying to avoid these bench warrants, and so, as a result, that was really
complicating Social Security's task, trying to get a hold of you." Claimant also reported that an
SSA caseworker said "you hillbillies come down here, and you can't read and write . . . I'll fix
this where it'll take you a year or two to get your money." Claimant testified that he could not
remember the name of this caseworker, but that he had called her supervisor and that she was no
longer with the SSA. ALJ Lang concluded the hearing and told claimant that he could expect an

order "in the next month or so." (R. 423-431).

On February 12, 2008, ALJ Lang dismissed claimant's August 3, 2007 request for a hearing (despite the fact that the hearing had already occurred) because "the issue he raises is not an 'initial decision'" and "claimant was erroneously given appeal rights when his request to reopen was denied by the district office." (R. 30). The SSA sent the notice of dismissal to 4665 White Springs Road, Fulton, Mississippi. (R. 28). On April 10, 2008, claimant submitted a request for review of the hearing decision, stating: "Never got a letter was sent to wrong address to OHIO. After it was over the Denile (sic) was never sent out. I think they need to revie (sic) me. Thank you." On his request for review, claimant listed his address as 4665 White Springs Road, Fulton, Mississippi, the same address where the SSA had sent the notice of dismissal. (R. 79).

On November 13, 2008, the Appeals Council (AC) granted claimant's request for review, vacated ALJ Lang's order of dismissal, and remanded the case to an ALJ for further proceedings. In making this decision, the AC reviewed claimant's history with the SSA, revealing details that are not present elsewhere in the record. According to the AC:

> [O]n May 10, 2006, the claimant was notified that he was not eligible for SSI benefits because he had failed to co-operate in providing information needed to determine if he met the non-disability requirements.
>
> While there is no formal reconsideration request in file, a conference was scheduled at the local Social Security office for May 15, 2006. The conference was delayed until July 5, 2007 and is documented in the file on a report of contact, dated July 10, 2006. On July 21, 2006, the claimant completed a form SSA-8000-BK. It is evident that the claimant intended to appeal the May 10, 2006 initial denial. Even if the claimant failed again to provide the required information, a reconsidered determination should have been issued upholding the prior determination. However, there is no evidence that a reconsidered determination was issued at the time.
>
> On March 15, 2007, the claimant filed a new application. Because this application

was filed within two years of the May 10, 2006 initial denial notice with respect to the earlier application and the claimant had already been found disabled based on that application, it should have been considered a request for reopening. It was not. Again the claimant was found to be disabled and on June 27, 2007, the claimant was awarded benefits based on the March 15, 2007 application only.

When the claimant received notice that he would be paid based on the March 15, 2007 application only, he requested reconsideration alleging that his prior application should have been reopened.

On August 3, 2007, the local Social Security office issued a reconsideration determination stating that, based on the evidence in file, the failure to co-operate denial of his prior claim was correct. Although it states that the determination was based on a reconsideration request of April 9, 2007, it is evident that the it (sic) was actually pursuant to the June 27, 2007 request inasmuch as a fully favorable award notice had been issued on June 14, 2007 and any issues regarding failure to co-operate based on the March 15, 2007 application would have already been resolved. Thus it appears that the local Social Security office recognized the claimant's intent to file a reconsideration on or about May 15, 2006 and that no reconsidered determination had previously been issued, and addressed the outstanding request via the reconsidered determination of August 3, 2007.

(R. 85-86).

### The ALJ Hearing

Pursuant to this remand, ALJ Paul S. Conger, the ALJ whose opinion is at issue in this case, issued a notice on April 17, 2009 of a hearing to be held on April 28, 2009. (R. 88). On April 28, 2009, claimant waived his right to receive advance notice of his hearing and chose to proceed without representation. (R. 94-95). ALJ Conger conducted the hearing on April 28, 2009 in the Bibb County Correctional Center in Brent, Alabama. Claimant verified that his attorney had withdrawn. ALJ Conger briefly reviewed a history of the case, stating: "[Y]ou got incarcerated, and consequently, they canned you on the grounds of lack of cooperation, because you were in another state . . . you tried to appeal that, to say I did try to respond to that, but I couldn't, because I was in jail, and I wanted to." Claimant agreed to ALJ Conger's statements

13

and then testified as to his various medical problems. (R. 436-40).

Claimant testified that he had a third grade education, he was in special education classes all of his life, and that he was completely illiterate, and that he was unable to read or write anything other than his own name. A vocational expert testified that an individual such as the claimant would be unable to do any work at all. ALJ Conger agreed with the vocational expert and stated: "I'm going to pay you for that time period . . . Sorry to be this long getting you your day in Court." (R. 440-41).

*The ALJ's Decision*

On May 5, 2010, ALJ Conger issued an unfavorable decision, refusing to reopen claimant's previous application for SSI. He summarized the extensive procedural history in this case and then proceeded with an evaluation of the evidence. (R. 11-20). ALJ Conger noted that claimant did not present any evidence to contradict Ms. Burnett's July 10, 2006 report of contact and that the evidence made clear that claimant did not cooperate with the SSA. ALJ Conger found that the claimant failed to cooperate with the SSA in May, July, and October of 2006 by failing to provide information about his addresses, incarcerations and his wife's earnings that was necessary for determining his eligibility for supplemental security income. ALJ Conger further found that the May 10, 2006 and August 3, 2007 denials were correct, and that the May 10, 2006 and "on or about" October 17, 2006 denials were not due to be reopened. The ALJ also noted that "notwithstanding the Appeals Council's statement that a fully favorable award notice was issued to the claimant on June 14, 2007," the "effectuating component" should "take the claimant's post March 15, 2007 incarcerations into effect when determining the amounts and months, if any, for which the claimant meets the non-disability requirements for eligibility for

14

supplemental security income based on his application filed on March 15, 2007." (R. 19-21).

*Claimant's Appeal*

In response to this decision, claimant sent the SSA a handwritten letter, received on June 14, 2010, stating his disagreement with the ALJ's decision and requesting an appeal. (R. 10, 412).  On July 6, 2010, the SSA received another handwritten letter from claimant, appealing his case to the Appeals Council and "answer[ing] all questions to the best of [his] ability." According to claimant, on February 6, 2006 he told ALJ Vanderhoef about his 2000 to 2003 incarceration and gave the Judge his correct address. In April he called his Florence, Alabama caseworker and reported that he was incarcerated in Ohio. Claimant agreed that the caseworker should send his paperwork to the SSA office in Defiance, Ohio, where claimant would report when he got out of jail. (R. 413).

On July 3, when claimant "just was released," he went into the SSA office and spoke with Ms. Burnett.  According to claimant, Ms. Burnett "got really upset at me and I had to call her supervisor in and I told him she was given (sic) me a hard time concerning my address." After the supervisor left, Ms. Burnett got upset with claimant for calling her supervisor, told him that she would not be working there long, and told claimant that she would see that his claim would not be approved or, if it was approved, it would take two to three years. Claimant alleges to have told Ms. Burnett all about his various addresses, his incarcerations, and that he and his wife were not together. Claimant claims that he told Ms. Burnett to call or write his attorney, Mark Hammitte, if she needed more information, but Ms. Burnett did not do so. (R. 413-16).

Claimant asserted that his federal incarceration from 2002-2003 did not have anything to do with his 2004 SSI claim and neither did his arrest for "criminal trespassing, drugs, a violation

and intimidation," which Ms. Burnett apparently confronted him with. He acknowledged

spending one year in federal prison "on June 30, 2005" and then at a halfway house on January

11, 2006. Claimant asserted that on May 10, 2006, while in jail in Ohio, he called Alabama to

report that he would not be present for his interview. He also stated that his letter was sent to the

wrong address and that he was not notified that his claim was being denied. He claimed that his

October 17, 2006 letter was also sent to the wrong address. According to Claimant, both letters

were sent to P.O. Box 1261, Hamilton, Alabama, a box which had been closed. Claimant's

correct address was 212 Grant Lane, Hamilton, Alabama and he reiterated that he had given this

address to ALJ Vanderhoef on February 6, 2006. (R. 416-17).  On January 18, 2012, the AC

denied claimant's request for review of the ALJ's decision not to reopen. (R. 6).

## VI. DISCUSSION

A. The ALJ's Denial of Claimant's Request to Reopen His February 29, 2004 SSI Application

The claimant asserts that the decision of ALJ Conger is "in conflict with the evidence"

(doc 1, claim 1), that the denial "should be reopened" (*Id*., claim 2), that his favorable award of

June 14, 2007 "is due to be reconsidered and honored" (*Id*., claim 3), that his "failure allegedly to

cooperate  . . . was in fact by no fault on the part of the [claimant]" (*Id*., claim 4), and that he was

"improperly denied benefits" (*Id*., claim 5). The court construes these various attacks to be an

argument that the ALJ improperly refused to reopen the previous denial of claimant's disability

application for failure to cooperate.

The law on this issue comes primarily from the Code of Federal Regulations and the

United States Code. Before a claimant can receive SSI benefits, he must meet all of the eligibility

requirements. *See* 20 C.F.R. § 416.202. Disability is not the only requirement; the SSA must also

16

conduct an evaluation of the claimant's income and other resources, to insure that he does not have more than is permitted by law. *Id*. In addition, a claimant is ineligible for SSI benefits under most circumstances if he is a resident of a public institution, such as a state or federal prison. *See* 20 C.F.R. §§ 416.211 and 416.201 (defining a public institution as "an institution that is operated or controlled by the Federal government, a State, or a political subdivision of a State such as a city or county").

For a claimant to prove that he meets these eligibility requirements, he must provide any information, documentation, or other evidence requested by the SSA. *See* 20 C.F.R. § 416.200; *see also* 42 U.S.C. § 1383(e)(1)(A) ("The Commissioner of Social Security shall . . . prescribe such requirements with respect to . . . the furnishing of other data and material . . . as may be necessary for the effective and efficient administration of this subchapter."). The claimant must "answer completely" when providing information. 20 C.F.R. § 416.203(a). The SSA may ask about relevant information, including the income of claimant's spouse and details about claimant's living situation as it relates to the support and maintenance he is receiving from others. *See* 42 U.S.C. §§ 1382(a), 1382a(a)(2)(A), 1382b; 20 C.F.R. § 416.1104 ("In some situations we must consider the income of certain people with whom you live as available to you and part of your income.").

This case presents an intricate web of procedural history that includes unfortunate oversights on both sides and two very different perspectives on what went on in the office of Ms. G. Burnett on July 5, 2006. This court recognizes that claimant was in the unfortunate, though self-imposed, position of being incarcerated from March 19, 2006 to June 29, 2006—the exact time period when ALJ Vanderhoef determined that he was disabled and the SSA began the

process of determining his eligibility. If the SSA's May 10, 2006 denial had been the only denial at issue here, the outcome of this case might be different; however, it is not.  Both the May 10, 2006 denial and the on-or-about October 17, 2006 denial are at issue.

Upon claimant's release from the Lucas County Jail, he reported in person to discuss the status of his claim. At this time, the SSA gave claimant a second chance to establish his eligibility and receive benefits. Regardless of what went on in Ms. Burnett's office and whose version of the meeting is true, the fact remains that claimant left this meeting fully informed as to what the SSA needed from him before it could confirm his eligibility to receive SSI benefits. And the claimant did not provide this information in a timely manner. Furthermore, the SSA sent at least two letters, on September 16, 2006 and October 5, 2006, reminding claimant of its need for information and informing him of the consequences should it not receive this information by October 17, 2006.

Claimant asserts that he did not receive these letters and the record confirms that they were sent to his "old" address at P.O. Box 1261, Hamilton, Alabama. However, because the transcript of the February 6, 2006 hearing (in which claimant claims to have informed ALJ Vanderhoef of his new address) is not part of the record before this court, the court is unable to confirm that the SSA had notice of this address change. Furthermore, claimant admitted to being aware that much of his mail was not being forwarded properly, therefore he is not blameless in the matter.

Again, regardless of whether claimant received these letters and who bears the fault if he did not, claimant was undisputably aware of what the SSA needed from him as a result of the July 5, 2006 face-to-face meeting in the SSA field office. This knowledge, combined with

claimant's history of failing to show up for appointments (even when not incarcerated–e.g,

claimant's June 22, 2005 hearing), frequent changes of address, and lack of diligence in

forwarding his old address and informing others of his new address, convinces this court that

ALJ Conger's finding that claimant failed to cooperate is supported by substantial evidence.

The court next looks to whether ALJ Conger applied the proper legal standards to this

factual conclusion. The parties do not cite, and the court has not found, any cases addressing this

exact issue. Support does exist, however, for the proposition that failure to cooperate at some

point in the determination process is grounds for denial. *See Rautio v. Bowen*, 862 F.2d 176 (8th

Cir. 1988 (finding that evidence of claimant's failure to cooperate during examinations supported

the ALJ's determination that the claimant did not suffer from disabling pain); *Bolton v. Astrue*,

No. 3:09-cv-900-J-TEM, 2011 WL 1060666, at *9 (M.D. Fla. March 22, 2011) (determining that

claimant's failure to cooperate during a consultative examination supported the ALJ's conclusion

that claimant was not credible); *Kreidler v. Barnhart*, 385 F.Supp.2d 1034 (C.D. Cal. 2005)

(holding that claimant's repeated failures to attend scheduled consultative examinations

constituted a failure to cooperate sufficient to warrant termination of her disability benefits). This

support, coupled with the strong obligations imposed by the Code of Federal Regulations and the

United States Code, as discussed above, lead this court to affirm the ALJ's decision not to reopen

the previous denials.

## B. Claimant's Due Process Claim

Claimant also argues that the decisions of the ALJ and the Appeals Officer (on behalf of

the AC) deprive him of due process of law. (Doc. 1, Claim 1, 2, 6). Although the claimant asserts

his claim under the guarantees of the Fourteenth Amendment, this court construes it as a claim

under the due process clause of the Fifth Amendment of the U.S. Constitution, because the SSA

is an agency of the federal government. *See Jones v. Buffalo Creek Coal & Coke Co.*, 245 U.S.

328 (1917) (holding that the Fourteenth Amendment has no application where the action

complained of is not the action of a state); *see also Thorington v. City Council of Montgomery*,

147 U.S. 490, 492 (1893) ("The fifth amendment operates exclusively in restriction of federal

power, and has no application to the states . . .").

The Fifth Amendment states: "No person shall . . . be deprived of life, liberty, or property,

without due process of law . . ." The Supreme Court has found that social security benefits

qualify as due process "property" in some circumstances. *Mathews v. Eldridge*, 424 U.S. 319,

332 (1976).[2] According to the Court, "[t]he fundamental requirement of due process is the

opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333 (citations

and internal quotations omitted); *see also Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985)

(finding that the procedures employed by the ALJ did not deprive a social security claimant of

procedural due process).

In this case, the claimant seems to equate "due process" with an outcome in his favor. In

his second claim he asserts that "the decision of the Administrative Law Judge and the decision

of the Appeals Officer has deprived [claimant] of the due process in which had been previously

provided to [claimant] by the previous determination of the Administrative Law Judge." (Doc. 1,

Claim 2). His premise, however, is incorrect. The Supreme Court has held that "[i]n procedural

due process claims, the deprivation . . . is not in itself unconstitutional; what is unconstitutional is

_____

[2]Although the circumstances in *Mathews* are not applicable here, this court's other findings on the due process issue make it ultimately unnecessary to determine whether the benefits qualify as property in this case.

the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113 (1990) (emphasis in original). In both the "previous determination" (presumably the March 31, 2006 determination of claimant's disability) and the current ruling of ALJ Conger before the court today, claimant received the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 33.

The only specific way that claimant alleges that his due process rights were violated is through the "false accusation" of Ms. Burnett. However, even if Ms. Burnett's statements were indeed false, claimant had a full and fair opportunity to challenge and disprove her statements at his hearing before ALJ Conger. Despite this opportunity, ALJ Conger noted that "[a]t his hearing . . . [claimant] did not . . . present any evidence to contradict any of the information set forth in Ms. Burnett's July 10, 2006 report of contact." (R. 19).

Claimant's only specific example of how he was denied due process fails and the court does not see from the record any other area in which process was lacking. In fact, the extensive and intricate procedural history in this case show that claimant received an abundance of process. As such, this court finds that ALJ Conger's decision not to reopen claimant's denials does not deprive claimant of the due process of law.

C. Claimant's Equal Protection Claim

Finally, claimant argues that the decisions of the ALJ and the Appeals Officer (on behalf of the AC) deprived him of equal protection of the law. (Doc. 1, Claim 1). Again claimant asserts his claim under the guarantees of the Fourteenth Amendment, but this court construes it as a claim under the due process clause of the Fifth Amendment of the U.S. Constitution, because the SSA is an agency of the federal government. *See Bolling v. Sharpe*, 347 U.S. 497 (1954) (holding

that the Equal Protection Clause of the Fourteenth Amendment only applies to the states, but

recognizing that the Fifth Amendment implicitly guarantees equal protection from the federal

government).

In addition to recognizing the equal protection component of the Fifth Amendment, the

Court has found that it is analyzed in the same way as the equal protection component of the

Fourteenth Amendment. *See Buckley v. Valeo*, 424 U.S. 1, 93 (1976) (superseded on other

grounds). As to the substantive application of the equal protection clause, the Court has held:

> The equal protection obligation imposed by the Due Process Clause of the Fifth
> Amendment is not an obligation to provide the best governance possible. . . .
> Unless a statute employs a classification that is inherently invidious or that
> impinges on fundamental rights, areas in which the judiciary then has to intervene
> in the democratic process, this Court properly exercises only a limited review
> power over Congress, the appropriate representative body through which the
> public makes democratic choices among alternative solutions to social and
> economic problems.

*Schweiker v. Wilson*, 450 U.S. 221, 230 (1981) (finding that the Social Security Act does not

classify individuals directly on the basis of mental health).

In this case, claimant makes a blanket assertion that he has been denied equal protection

without even alleging that ALJ Conger or anyone else in the SSA has applied any particular

classification to him, much less a classification that "is inherently invidious or that impinges on

fundamental rights." *Id.*  Claimant does not allege any specific ways in which he was denied

equal protection. As such, this court finds that ALJ Conger's decision not to reopen claimant's

denials does not deprive claimant of equal protection of the law.

## VII. CONCLUSION

The court finds that the ALJ's factual conclusions are supported by substantial evidence

and that he applied the correct legal standards. Therefore, for these reasons, this court concludes that the decision of the ALJ is to be AFFIRMED.

DONE and ORDERED this 23rd day of September, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE